## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ARNOLD A. COVINGTON,

      Petitioner,

-vs-                             Case No.   8:21-cv-289-WFJ-TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

### ORDER

Mr. Covington, a Florida prisoner, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and a memorandum in support (Doc. 2). Respondent filed a response opposing the petition (Doc. 11), to which Mr. Covington replied (Doc. 13). Finally, Mr. Covington filed additional argument supporting his claims (Doc. 23) and an audio CD of the August 21, 2015 hearing on his motion to suppress in his state criminal case (Doc. 34). Upon consideration, the petition will be denied.

**I. Background**

On April 11, 2014, Mr. Covington sold an ounce of heroin to Detective Smith of the Pinellas County Sheriff's Office through a confidential informant, Maikel Freites (Doc. 11-2, Ex. 2 at 325; Doc. 11-3, Ex. 12 at 508-11).[1] Later, Covington and law

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page

enforcement went to his brother's apartment where Covington consented to a warrantless search and identified the location of over 20 grams of marijuana and a trafficking amount of heroin (Doc. 11-2, Ex. 2 at 331-53). Covington was charged by an Amended Information with three counts of trafficking in illegal drugs (heroin) (Counts One, Four, and Seven), two counts of sale or delivery of heroin (Counts Two and Five), two counts of possession of heroin with intent to sell, manufacture, or deliver (Counts Three and Six), and one count of possession of marijuana with intent to sell, manufacture, or deliver (Count Eight) (Id., Ex. 2 at 315-317).

Counts Seven and Eight, the charges relating to the drugs discovered at the residence, were severed from Counts One through Six (Id., Ex. 2 at 303-310). Following a jury trial on March 3-4, 2016, Covington was acquitted of the trafficking charge (Count Seven) and found guilty of the lesser offense of possession of marijuana, 20 grams or over (Count Eight) (Id., Ex. 2 at 602-04). Following a jury trial (on Count One only) on September 28 and 29, 2016, Covington was found guilty as charged of trafficking in heroin (Id., Ex. 2 at 645). He was sentenced to 30 years in prison on Count One and to a concurrent 5-year sentence on Count Eight (Id., Ex. 2 at 646-50). Counts Two, Three, Four, Five, and Six were nol prossed by the State (Doc. 11-3, Ex. 12 at 466). The state appellate court per curiam affirmed the convictions and sentences.

---

numbers assigned by the Court's electronic docketing system.

(Doc. 11-2, Ex. 7).

Mr. Covington petitioned the Second District Court of Appeal for a writ of prohibition quashing his convictions, arguing that the trial court lacked subject matter jurisdiction over his trial because of "outrageous police conduct" (Doc. 11-2, Ex. 10). The petition was denied without explanation (Id., Ex. 11). Mr. Covington unsuccessfully sought post-conviction relief under Florida Rule of Criminal Procedure 3.850 (Doc. 11-3, Ex. 12 at 216-42, 449-57, 587-95), and the state appellate court per curiam affirmed the denial of relief without a written opinion (Id., Ex. 16). This federal habeas petition followed (Doc. 1).

## II. Standards of Review

### A. AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Mr. Covington's convictions and sentences, as well as the denial of postconviction relief, without discussion. These decisions

warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

### B. Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the

conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

### C. Ineffective Assistance of Counsel

Mr. Covington alleges ineffective assistance of trial counsel. Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires showing deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.

Mr. Covington must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Mr. Covington must show "a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential."). "The question [on federal habeas review of an ineffective-assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## III. Discussion

**Ground One: Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure. (Doc. 1 at page 6).**

Mr. Covington contends the search of his brother's apartment during which law enforcement seized drugs violated the Fourth Amendment because there was no search warrant or consent by Mr. Covington's brother.

Respondent contends that Ground One is procedurally barred from review in this Court (Doc. 11 at 13-17). The Court agrees. Mr. Covington failed to raise this specific claim in the state courts. *See Picard v. Connor*, 404 U.S. 270, 276 (1971) (to exhaust state remedies, state prisoner who seeks federal habeas corpus must present to state court the same claim he urges upon the federal courts). He did not argue the search was invalid because there was no warrant or consent from his brother. Instead, in his motion to suppress he argued his consent to search was coerced (Doc. 11-2, Ex. 2 at 70-71). And he failed to challenge the search on direct appeal (Id., Ex. 5). *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state [petitioners] must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

If Mr. Covington returned to state court to raise the claim, the state court would deny the claim as procedurally barred. See Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."). Thus, the claim is procedurally defaulted. Mr. Covington has not overcome this procedural

default by showing cause and prejudice, or a fundamental miscarriage of justice.[2] Accordingly, Ground One is procedurally barred from review.

The claim also is barred from review under *Stone v. Powell*, 428 U.S. 465 (1976). "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494 (footnotes omitted). Therefore, to obtain federal habeas review on a Fourth Amendment claim, a petitioner must demonstrate that he "was denied an opportunity for a full and fair litigation of that claim at trial and on direct review." *Id*. at 494, n.37. The phrase "'opportunity for full and fair litigation' means just that: an opportunity." *Lawhorn v. Allen*, 519 F.3d 1272, 1287 (11th Cir. 2008) (quoting *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978)). "[I]f state procedures afford the defendant in a criminal case the opportunity to litigate whether evidence obtained in violation of the fourth amendment should be excluded, and if that opportunity to litigate fourth amendment issues is 'full and fair[,]' ... then *Stone v. Powell* precludes federal habeas corpus consideration of those issues *whether or not the*

---

[2] In his reply, Mr. Covington asserts as cause trial counsel's failure to preserve the issue for appeal (Doc. 13 at 3). However, because Mr. Covington failed to present this alleged ineffective assistance of counsel to the state courts as an independent claim, the claim is itself procedurally defaulted and cannot demonstrate "cause." *See Murray v. Carrier*, 477 U.S. 478, 488–89 (where ineffective assistance of counsel is alleged as cause to excuse a procedural default, the claim of ineffectiveness must be presented to the state courts as an independent claim).

*defendant avails himself of that opportunity*." *Caver*, 577 F.2d at 1193 (emphasis added).

Mr. Covington received an opportunity for full and fair litigation of his Fourth Amendment claim. The trial court held an evidentiary hearing on his motion to suppress during which multiple witnesses testified, including Mr. Covington (Doc. 11-2, Ex. 2 at 75-311). And Mr. Covington fails to show that the state appellate court did not afford him an opportunity to fully present his Fourth Amendment claim. *See Mason v. Allen*, 605 F.3d 1114, 1120 (11th Cir. 2010) ("full and fair consideration...includes at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when there are facts in dispute, and full consideration by an appellate court when the facts are not in dispute." (quoting *Bradley v. Nagle*, 212 F.3d 559, 565 (11th Cir. 2000))).

Mr. Covington cannot show he was denied the opportunity for full and fair litigation of his Fourth Amendment claim. *Stone* therefore bars review of this claim. Accordingly, Ground One warrants no relief.

**Ground Two: *Brady* violation. (Doc. 1 at page 7).**

Mr. Covington contends that the prosecution violated *Brady*[3] by failing to disclose: (1) Detective Smith's arrest on October 12, 2016, for grand theft of law

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

enforcement equipment on September 19, 2016; grand theft of prescription pills on September 24, 2016; and possession of Hydrocodone on September 24, 2016; and (2) the above criminal activity that led to Detective Smith's arrest on October 12, 2016 (Doc. 1 at 7; Doc. 2 at 2-4). The Court considers each piece of information in turn.

### 1. The October 12, 2016 arrest

Mr. Covington alleges that the prosecution violated its *Brady* obligations by failing to disclose Detective Smith's arrest on October 12, 2016 (Doc. 2 at 2). The state post-conviction court rejected this claim. It held that "Detective Smith could not have volunteered his October 12, 2016 arrest at the Defendant's September 28, 2016 trial." (Doc. 11-3, Ex. 12 at 454).

The rejection of this claim was reasonable. "To prevail on a *Brady* claim, the defendant must establish: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the defendant incurred prejudice." *Wright v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1256, 1278 (11th Cir. 2014). "The prejudice or materiality requirement is satisfied if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 746 (11th Cir. 2010). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Maharaj v.*

11

*Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1316 (11th Cir. 2005).

This *Brady* claim fails because Detective Smith's October 12, 2016 arrest did not happen until after Mr. Covington's first trial on March 4, 2016, and second trial on September 28 and 29, 2016. Therefore, there was no evidence suppressed by the State at the time of the trials. Thus, the state post-conviction court reasonably rejected the *Brady* claim based on Detective Smith's arrest.

### 2. Detective Smith's criminal activity on September 19 and 24, 2016

Mr. Covington alleges that the prosecution violated its *Brady* obligations by failing to disclose Detective Smith's criminal activity on September 19, 2016, when he pawned the handgun issued to him by the Sheriff's Department, and September 24, 2016, when he stole Hydrocodone from the Sheriff's Department (See Doc. 11-3, Ex. 12 at 264). Mr. Covington argues this information was suppressed by the State because Detective Smith knew of his own actions and as an investigator was part of the prosecution team. *See United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. 1989) ("*Brady* and its progeny apply to evidence possessed by a district's prosecution team, which includes both investigative and prosecutorial personnel.") (citation and internal quotation marks omitted). He contends this information would have been admissible as impeachment evidence against Detective Smith.

Initially, to the extent Mr. Covington challenges his possession of marijuana conviction on March 4, 2016, Detective Smith's criminal activity occurred in September 2016, after the trial. Therefore, the *Brady* claim fails because there was no

evidence suppressed by the State at the time of the March 3-4, 2016 trial.

To the extent Mr. Covington challenges his trafficking in heroin conviction on September 29, 2016, the state post-conviction court rejected this claim. It held there was no *Brady* violation because Detective Smith was not required "to reveal information at trial about an alleged offense for which he had not been charged or convicted[,]" since that information was "bad character evidence" inadmissible under Florida law (Doc. 11-3, Ex. 12 at 454).

The rejection of this claim was reasonable because there is no "reasonable probability that, had [Detective Smith's alleged criminal activity on September 19 and 24, 2016,] been disclosed to the defense, the result of the proceeding would have been different." *Allen*, 611 F.3d at 746. "A reasonable probability of a different result is possible only if the suppressed information is itself admissible evidence or would have led to admissible evidence." *Spaziano v. Singletary*, 36 F.3d 1028, 1044 (11th Cir.1994). Mr. Covington does not explain how Detective Smith's bad acts of pawning his service weapon and stealing the Hydrocodone were admissible evidence or would have led to admissible evidence. It is highly questionable whether the evidence would have been admissible under Florida law. *See Rolle v. State*, 386 So.2d 3 (Fla. 3d DCA 1980) (general rule is that witness may not be interrogated as to prior arrests or pending charges, but only as to prior convictions); *Harmon v. State*, 394 So.2d 121, 125 (Fla. 1st DCA 1980) ("Arrest, without more, does not, in law any more than in reason, impeach the integrity of a witness."). Moreover, setting aside Detective Smith's testimony, the

13

jury heard significant other evidence of Mr. Covington's guilt.[4]  Therefore, there is no reasonable probability of a different result, and no *Brady* violation even if Detective Smith's September 2016 actions had been wrongfully suppressed.

Mr. Covington has failed to demonstrate that the state court's decision is contrary to, or an unreasonable application of, clearly established federal law, or is based on an unreasonable determination of the facts. Accordingly, Ground Two warrants no relief.

**Ground Three: *Brady* violation. (Doc. 1 at page 9).**

Mr. Covington contends that the prosecution violated *Brady* by failing to disclose Detective Smith's "use of excessive amounts of Oxycodone" (Doc. 1 at 9; Doc. 2 at 4-5). He argues had the jury known Detective Smith was addicted to pain pills, the jury would have found him less credible (Doc. 13 at 9-12).

In state court, Mr. Covington raised a similar claim in his amended Rule 3.850 motion. There, he asserted Detective Smith violated *Brady* in failing to disclose "that he used excessive amounts of Oxycodene [sic] during the same approximate time as the crimes for which the Defendant was convicted. . . ." (Doc. 11-3, Ex. 12 at 226). He further asserted "proffered testimony would show. . .[t]hat Deputy S. Smith excessively used Oxycodone at or about the time of his testimony at [Mr. Covington's] trial[, and. . .his] drug use affected his ability to observe, remember, or recount[,]"

---

[4]  See detailed discussion of the other evidence in Ground Three below.

rendering his testimony "inadmissible." (Id., Ex. 12 at 227). He argued this information "undermine[d] [Detective Smith's] credibility both as a key witness for the State/Prosecution during defendant's trial and as primary investigator during the undercover operation leading to the defendant's arrest." (Id., Ex. 12 at 228).

The state post-conviction court rejected this claim:

> In Ground Three the Defendant alleges that Detective Steven Smith withheld impeachment evidence, to wit, that he used excessive amounts of "Oxycodene" [sic] during the approximate time frame as the drug offenses for which the Defendant was charged. As in Ground Two, the Defendant fails to explain how this alleged bad character evidence constitutes <u>Brady</u> material or how the information could be introduced at trial. Detective Smith did not have an affirmative duty to volunteer at trial the specifics of his medical treatment or his use of his medications. The documents attached to the Defendant's motion indicate that Detective Smith did not use pain pills while on duty but on the weekends when he was not working. Moreover, contrary to the Defendant's allegations, the documents attached to the Defendant's motion show that Detective Smith first started using prescribed oxycodone after back surgery in November 2015, more than a year and a half after the drug transaction involving the Defendant. Thus, according to the documents, Detective Smith was not taking the prescribed pills at the time of the April 11, 2014 drug transaction with the Defendant and the subsequent discovery of additional drugs at the Defendant's residence. Ground Three is denied.

(Id., Ex. 12 at 454).

To the extent the state post-conviction court addressed Mr. Covington's claim that Detective Smith withheld that he was addicted to Oxycodone when Mr. Covington committed the offenses, the rejection of the claim was reasonable. The state post-conviction court found that Detective Smith was not taking Oxycodone on April 11, 2014, when Mr. Covington sold Detective Smith drugs and brought the officers to

the apartment where they discovered additional drugs. This factual finding is presumed correct, and Mr. Covington fails to rebut the finding with clear and convincing evidence. § 2254(e)(1). Moreover, the record supports the finding. The documents attached to Mr. Covington's amended Rule 3.850 motion reveal Detective Smith started using prescribed oxycodone after back surgery in November 2015, more than a year and a half after the drug transactions involving Mr. Covington (Doc. 11-3, Ex. 12 at 267). Thus, Mr. Covington cannot establish a *Brady* violation because he fails his burden to demonstrate that the State suppressed favorable material evidence that Detective Smith was addicted to Oxycodone at the time of Mr. Covington's offenses.

To the extent Mr. Covington contends Detective Smith violated *Brady* in failing to disclose his addiction to Oxycodone when he testified at trial, the claim warrants no relief because there is no "reasonable probability that, had [Detective Smith's addiction] been disclosed to the defense, the result of the proceeding would have been different." *Allen*, 611 F.3d at 746.[5] Mr. Covington argues Detective Smith's addiction could have been used to impeach him. *See Edwards v. State*, 548 So.2d 656, 658

---

[5] Neither the state post-conviction court nor the state appellate court adjudicated on the merits Mr. Covington's claim that the State violated *Brady* in failing to disclose Detective Smith's addiction at the time of trial. Accordingly, this Court's consideration of the claim is necessarily *de novo*. *See Porter v. McCollum*, 558 U. S. 30, 39 (2009) (*de novo* review of the allegedly deficient performance of petitioner's trial counsel was necessary because the state courts had failed to address this prong of *Strickland* analysis). *See also Berghuis v. Thompkins*, 560 U. S. 370, 390 (2010) (federal courts can deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to habeas relief if his claim is rejected on *de novo* review).

(Fla.1989) (stating that evidence of drug use for impeachment is excluded unless: "(a) it can be shown that the witness had been using drugs at or about the time of the incident which is the subject of the witness's testimony; (b) it can be shown that the witness is using drugs at or about the time of the testimony itself; or (c) it is expressly shown by other relevant evidence that the prior drug use affects the witness's ability to observe, remember, and recount"). Even assuming that Detective Smith could have been impeached with his addiction to Oxycodone, the *Brady* claim still fails for lack of prejudice.

Setting aside Detective Smith's testimony, the jury was presented with "overwhelming evidence of [Mr. Covington's] guilt in the [crimes] for which he was tried." *United States v. Gilmore*, 833 F. App'x 790, 798 (11th Cir. 2020). That evidence included eye-witness testimony from the confidential informant, Maikel Freites, who was a classmate of Mr. Covington and participated in the drug transaction with Mr. Covington, an audio recording of the transaction, and testimony from Sergeant Stang who was in his vehicle watching the transaction between Mr. Covington and Mr. Freites, followed Mr. Covington's vehicle after the transaction, and arrested him (Doc. 44-1, Ex. 1 at 110-57; Ex. 2 at 175-81). Thus, even if Mr. Covington had presented evidence of Detective Smith's addiction at the time of trial, there is no reasonable probability that the outcome of his trial would have been different.[6] Accordingly,

---

[6] Detective Smith's testimony was consistent with Mr. Freites' testimony (Doc. 44-1, Ex. 1 at 30-109).

Ground Three warrants no relief.

**Ground Four: Inconsistent Statement (IAC) (Doc. 1 at 10).**

Mr. Covington contends counsel was ineffective in failing to impeach Mr. Freites at trial with an inconsistent statement he made during his August 29, 2016 deposition. Specifically, Mr. Covington alleges that when asked whether there was a promise of a lighter sentence in exchange for his cooperation or testimony, Mr. Freites answered "no." (Doc. 13 at 13). He asserts this trial testimony was inconsistent with Freites' deposition testimony because when asked the same question, Mr. Freites answered "well, it was a lighter sentence, you know, or probation." (Id.).

In denying this claim, the state post-conviction court stated:

In Ground Four the Defendant alleges that during the September 28, 2016 trial, counsel was ineffective for failing to impeach or confront C.I. Maikel Freites, with a prior inconsistent statement he made during his August 29, 2016 deposition testimony. The Defendant claims that during cross-examination at trial counsel asked the C.I. if he had been made any promises for a lighter sentence in exchange for his cooperation or testimony and the C.I. answered "no." He claims, however, that during his August 29, 2016 deposition the C.I. was asked the same question and he answered "Well, it was a lighter sentence, you know, or probation or, you know, like, it was a couple of things that were thrown out there, you know." The Defendant contends that counsel should have used this statement to impeach the C.I.

At trial the C.I. testified that he had been made no promises. (See Exhibit H: Jury Trial Transcript, pp. 165-69). The Defendant refers to two specific lines on page 29 of the C.I.'s deposition transcript.[5] While the specific lines the Defendant refers to could be read to indicate promises from law enforcement, read in context it is clear that no specific promise was made to the C.I. in exchange for his testimony. The C.I. specifically stated at trial that no one talked about dropping the case against him. When asked during the deposition if he was given the idea

18

that it would be beneficial to him if he helped law enforcement the C.I. answered: "Well, they said that - they did say that they could help me, you know. Like I said, nothing was actually promised to me of what." This is not inconsistent with the C.I.'s trial testimony that he had been made no promises in exchange for his testimony at the Defendant's trial. Furthermore, this is consistent with Detective Smith's testimony that no specific promises were made in exchange for the C.I.'s cooperation. [sic] <u>See</u> Exhibit H: Jury Trial Transcript, pp. 85-86). Ground Four is denied.

FN 5 The Court notes that the deposition transcript of the C.I. does not appear to be filed in the above-styled case. Thus, the Court relies on the Defendant's sworn representation that his exhibit F is an accurate copy of page 29 of the C.I.'s deposition transcript.

(Doc. 11-3, Ex. 12 at 455).

The state post-conviction court's denial of this claim was reasonable. The trial and deposition transcripts support the state post-conviction court's finding that Mr. Freites' trial testimony was not inconsistent with his deposition testimony.

During trial, Mr. Freites testified that although he was hoping for leniency in his own case, no one promised him anything in exchange for his cooperation in Mr. Covington's case (Doc. 44-1, Ex. 1 at 115-17, 147-149). During his deposition when asked, "Did they mention, like -- like, a lighter sentence or probation or, like, not filing charges, or things like that?", Mr. Freites answered, "Well, it was a lighter sentence, you know, or probation or, you know, like, it was a couple of things that were thrown out there, you know." (Doc. 11-3, Ex. 12 at 308). Mr. Covington contends this deposition testimony is inconsistent with Mr. Freites' trial testimony that he was promised nothing for his cooperation. The Court disagrees.

The above excerpt from the deposition reveals Mr. Freitas was asked whether

19

"they *mention[ed]*" a lighter sentence, probation, or not filing charges. He was not asked whether he was *promised* anything in exchange for his cooperation. And his answer was confusing and certainly did not indicate he was promised something in return for his cooperation. In fact, immediately before answering this question he stated, "Like I said, nothing was actually promised to me. . . ." (Id.). Thus, counsel was not deficient in failing to use Mr. Freites' deposition testimony to impeach his trial testimony that he was not promised anything for his cooperation because the deposition testimony was not inconsistent with the trial testimony. *See Morton v. State*, 689 So.2d 259, 264 (Fla.1997), *receded from on other grounds by Rodriguez v. State*, 753 So.2d 29 (Fla.2000) (a party may attack the credibility of a witness by introducing statements of the witness inconsistent with the witness's present testimony, the statement, however, "should be truly inconsistent. . . .").

Even if the deposition testimony was inconsistent with Mr. Freites' trial testimony, Mr. Covington still cannot show either deficient performance or prejudice. The trial transcript reveals defense counsel effectively cross-examined Mr. Freites regarding the reason he cooperated with law enforcement and got him to admit he was hoping for and received leniency (Doc. 44-1, Ex. 1 at 147-49). Moreover, during closing defense counsel vigorously argued the testimony that nothing was promised to Mr. Freites in exchange for his cooperation was not credible (Id., Ex. 1 at 222-24).

Whether counsel would have been more effective had he impeached Mr. Freites with his alleged inconsistent statement requires an inappropriate use of hindsight to

20

assess the effectiveness of counsel. *See Delap v. Dugger*, 890 F.2d 285, 298 (11th Cir.1989). The decision to cross-examine a witness and the manner in which the cross-examination is conducted are tactical decisions "well within the discretion of a defense attorney." *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir.2001) (quoting *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir.1985)). Further, counsel is strongly presumed to make decisions in the exercise of professional judgment. *See Strickland*, 466 U.S. at 690.

Mr. Covington has not overcome the strong presumption that counsel's performance was reasonable and adequate. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.1994). He therefore has failed to show that counsel's performance was constitutionally deficient in failing to impeach Mr. Freites with his deposition testimony.

Since Mr. Covington has shown neither deficient performance nor consequent prejudice, he has not met his burden under *Strickland*. Accordingly, Ground Four warrants no relief.

**Ground Five ("Question 13(a)"): Newly Discovered Evidence. (Doc. 2 at 6-7).**

Mr. Covington contends he is entitled to a new trial based on newly discovered evidence, i.e., Detective Smith's theft of his service weapon and the Hydrocodone in September 2016, and his subsequent arrest on October 12, 2016. The state postconviction court rejected Mr. Covington's claim of newly discovered evidence. (Doc. 11-3, Ex. 12 at 451-53). The denial of that claim presents no basis for federal habeas relief. Under Florida law, a defendant may "obtain a new trial based on newly

21

discovered evidence" if he "meet[s] two requirements": (1) "the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence"; and (2) "the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial." *Taylor v. State*, 260 So. 3d 151, 158 (Fla. 2018). Federal habeas law is different, however. It is well established that, "at least in non-capital cases," a federal court cannot "grant[ ] habeas relief based upon a claim of actual innocence." *Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1356 (11th Cir. 2007). Thus, "[f]ederal habeas relief is not warranted for claims premised on newly discovered evidence because they do not present cognizable federal constitutional claims." *Jones v. Sec'y, DOC*, 2011 WL 4435079, at *16 (M.D. Fla. Sept. 23, 2011) (collecting cases).

Even if a claim of "newly discovered evidence" was cognizable on federal habeas review, Mr. Covington's claim would fail. Detective Smith's arrest and criminal actions are not exculpatory but, at best, impeaching evidence. Under federal law, newly discovered impeaching evidence alone cannot supply the basis for a new trial. *See United States v. Vitrano*, 746 F.2d 766, 770 (11th Cir.1984) ("Newly discovered impeaching evidence is insufficient to warrant a new trial."). Accordingly, Ground Five warrants no relief.

Any of Mr. Covington's allegations not specifically addressed herein have been found to be without merit.

It is therefore **ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2. The **Clerk** shall enter judgment against Mr. Covington and close this case.

3. The Court may grant an application for a Certificate of Appealability (COA) only if Mr. Covington makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He cannot make this showing. Accordingly, a COA is **DENIED**. And because Mr. Covington is not entitled to a COA, he may not proceed on appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on February 22, 2024.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

SA: sfc
Copies to: Counsel of Record
          Arnold A. Covington, *pro se*